IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAURA JEANNETTE D.,[1] | Case No. 3:21-cv-00674-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Laura Jeannette D. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits from October 1, 2010, through April 30, 2015.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in March 1962, plaintiff alleges disability beginning October 1, 2010, due to abdominal pain and defecatory dysfunction, "problematic urination," and anxiety/depression due to her physical conditions. Tr. 262-63, 274, 1157. Her application was denied initially and upon reconsideration. On June 19, 2013, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 38-144. On August 30, 2013, the ALJ issued a decision finding plaintiff not disabled. Tr. 21-32.

Plaintiff timely filed an appeal and, on June 27, 2016, District Judge Ann Aiken reversed the ALJ's decision and remanded the case for further proceedings. Tr. 898-919. In particular, Judge Aiken found that the ALJ erred at step two by "impermissibly" excluding plaintiff's rectocele and enterocele as medically determinable and severe impairments based "on the date of diagnosis" and plaintiff's ability "to perform self-care activities." Tr. 917. Judge Aiken also determined that the ALJ committed harmful legal error in evaluating plaintiff's subjective symptoms testimony – which "consistently [showed that] she goes into the bathroom several times a day and during each visit she must make 12-18 attempts (i.e. from positions on the floor to the commode) to defecate," a "process [that] takes at least 15 minutes and up to 50-60 minutes per session" – as well as the medical opinions of longstanding gynecologist Lynn Osmundsen, M.D., and gastroenterologist Kirsten Kinsman, M.D., who diagnosed plaintiff with severe rectocele and enterocele[3] based on

---

[2] The record before the Court constitutes more than 1300 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] "Rectocele occurs when the thin wall of fibrous tissue (fascia) that separates the rectum from the vagina weakens, allowing the vaginal wall to bulge" and enterocele "occurs when the small

Page 2 – OPINION AND ORDER

objective testing obtained in November 2012. Tr. 902-14. Judge Aiken nonetheless determined the record was ambiguous because: (1) "the ALJ relied on a combination of permissible and impermissible factors to discredit plaintiff's subjective symptom testimony [and] the presence of the permissible credibility considerations weighs in favor of remand for further proceedings"; and (2) "plaintiff submitted a motion to supplement the record and has amended her application to request a closed disability period [because her] her symptoms have abated at a degree that will permit her to work." Tr. 918; *see also* Tr. 924 (Appeals Council remand order).

On April 24, 2017, a second ALJ hearing was held, wherein medical expert ("ME") Gerald Frankel, M.D. – "a urologist who's got experience in gynecology" – testified. Tr. 783-844. On August 31, 2017, the ALJ issued a second decision finding plaintiff not disabled. Tr. 759-74. On March 10, 2023, this case was reassigned to the Judicial Officer below (doc. 19).

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "from her alleged onset date of October 1, 2010 through her date last insured of December 31, 2011." Tr. 762. At step two, the ALJ determined only plaintiff's anxiety disorder was medically determinable and severe; while plaintiff's pelvic floor dysfunction and constipation were deemed "non-severe medically determinable impairments," the ALJ found that her rectocele and enterocele "have not been established as medically determinable impairments during the relevant time period." Tr. 762-63. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 764.

---

intestine (small bowel) descends into the lower pelvic cavity and pushes at the top part of the vagina, creating a bulge." Tr. 899-900 (citations and internal quotations omitted).

Page 3 – OPINION AND ORDER

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she "has sufficient concentration to understand, remember and carry out simple repetitive tasks [and] can concentrate in 2-hour increments for simple repetitive tasks with usual and customary breaks throughout an 8-hour day." Tr. 766.

At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing her past relevant work as a coffee maker. Tr. 772. Alternatively, at step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as hand packer, industrial cleaner, and housekeeping cleaner. Tr. 773.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find her rectocele, enterocele, and posterior compartment prolapse medically determinable and severe at step two; (2) discrediting her subjective symptom statements; (3) formulating an incomplete RFC; and (4) improperly assessing the medical opinions of Drs. Osmundsen, Kinsman, and Frankel. Concerning the latter, plaintiff asserts the ALJ erroneously "preferred the opinion[s]" of non-examining Dr. Frankel and May Ann Iyer, M.D., over those of examining/treating Drs. Osmundsen and Kinsman, and deemed the chart notes of Megan Cavanaugh, M.D., paramount, despite the fact that Judge Aiken "determined that Dr. Cavanaugh's report is not superior to Drs. Kinsman's report, for both doctors have the same specialty credential and both recommended surgery."[4] Pl.'s Opening Br. 20-24 (doc. 12).

---

[4] At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors were accorded

Page 4 – OPINION AND ORDER

The Commissioner concedes harmful legal error such that the sole issue on review is the proper legal remedy. Plaintiff contends the opinions of Drs. Kinsman and Osmundsen should be credited as true, such that she should be awarded a closed period of disability from October 1, 2010, through July 6, 2017, the date her pelvic floor impairments were surgically corrected. Conversely, the Commissioner asserts further proceedings are warranted because the medical record is ambiguous.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Upon review of the record, the Court finds that remand for the immediate payment of benefits is proper. Initially, as noted above, it is undisputed the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for affording less weight to the medical

---

greater weight than those of examining doctors, and the opinions of examining doctors were entitled to greater weight than those of a non-examining doctors. *Id.* Further, contradiction between a treating doctor's and another doctor's opinion did not warrant immediate rejection; rather, it simply meant that a lesser standard – i.e., "specific and legitimate" as opposed to "clear and convincing" – applied to the treating doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). The revised regulations have since done away with this medical hierarchy. *Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022).

Page 5 – OPINION AND ORDER

opinions of Drs. Kinsman and Osmundsen, and also gave undue credence to the hearing testimony of Dr. Frankel.[5]

Second, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful. The ALJ has already had two opportunities to assess the medical opinion evidence, and failed to do so appropriately (i.e., essentially duplicating the same errors despite Judge Aiken's clear decision and consultation with an ME). *Compare* Tr. 21-32 (first ALJ decision), *with* Tr. 759-74 (second ALJ decision); *see also Shawn G. v. Kijakazi*, 2021 WL 3683878, *5 (D. Or. Aug. 19, 2021) ("[b]ecause the ALJ twice improperly discredited [a medical source's] opinion and made the same errors when reevaluating [his] opinion that the Court identified during the Court's review of the ALJ's original decision, the Court does not believe that giving the ALJ a third opportunity to evaluate [that provider's] testimony will serve a useful purpose"). And plaintiff's date last insured has now lapsed more than a decade ago. Moreover, as demonstrated by the medical record, plaintiff's allegedly disabling physical conditions are "not [the type to] arise overnight." *Nabhani v. Colvin*, 2014 WL 940546, *9 (N.D. Cal Mar. 5, 2014).

Although the Commissioner contends "further administrative proceedings [are necessary to allow for] proper enhancement, analysis, and explanation by the ALJ" as to the medical source opinions, the Commissioner does not actually cite to any factual discrepancies in the record or evidence that casts serious doubt as to whether plaintiff was disabled as of the alleged onset date.

---

[5] Where, as here, the ME's testimony as to the timing of the plaintiff's claim fails to acknowledge important evidence and/or is inherently inconsistent as to the allegedly disabling impairment, the ALJ errs by relying on that testimony. Tr. 792-832, 842; *Kevin L. K. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 16758208, *3-5 (D. Or. Nov. 8, 2022); *see also Thielen v. Colvin*, 2014 WL 4384027, at *5 (E.D. Wash. Sept. 2, 2014) (examining doctor's "series of odd observations" – including inconsistent opinions surrounding the existence of certain mental health conditions – "reasonably cast doubt on the credibility of his conclusions").

Def.'s Resp. Br. 4 (doc. 16); *see also Freeman v. Colvin*, 669 Fed.Appx. 861, 861 (9th Cir. 2016) (a "conflict between medical opinions alone does not render evidence ambiguous") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)).

Critically, an independent review of the medical record reveals that plaintiff suffered from the same symptoms during the adjudication period that Dr. Frankel accepted as disabling after the date last insured. Tr. 826. Specifically, in December 2010, plaintiff reported "chronic constipation for over 3 years" and the need to "use laxatives or suppositories to have a bowel movement." Tr. 361. In January 2011, plaintiff presented to Dr. Osmundsen with a chief complaint of "constipation, extreme fluid reten[t]ion, [and] bloating." Tr. 455. In the history section, Dr. Osmundsen remarked: "I have had her see GI in the past and they describe slow motility she states she uses miralax and still has difficulty with daily [bowel movements] and she also feels like she needs to put her hand in her vagina to see if this will help with [bowel movements] which she states might." *Id.*

In August 2011, plaintiff sought treatment from her primary care doctor for chronic constipation and abdominal pain," despite a healthy diet and drinking "lots of fluids." Tr. 358. At that time, plaintiff stated "she lost her job because she has to go to the bathroom so many times a day." *Id.* Plaintiff's doctor noted "this is [an] ongoing problem without complete work up in [the] past" and that plaintiff "needs to see specialist, maybe have another colonoscopy since last one could not be completed, and may need further testing to get to the correct [diagnosis] and then establish treatment plan." Tr. 359.

The following month, plaintiff presented to Harry Bray, M.D., a gastroenterologist. On her intake form, plaintiff detailed her symptoms, including pain, discomfort, and the feeling of a "partial bowel obstruction," as well as her daily, time-consuming rituals aimed at producing a

Page 7 – OPINION AND ORDER

bowel movement. Tr. 678-81. During the appointment itself, plaintiff reported constipation, bloating, and cramping "[f]or about the last three years," and the need to use laxatives. Tr. 386. Dr. Bray "suspect[ed] a combination of reduced colonic motility and pelvic floor dysfunction," such that he recommended "a total colonoscopy [and perhaps] pelvic floor studies as well." Tr. 387. However, "[b]ecause of cost issues (it is impossible for her at the moment), we are going to defer these." *Id.*

Plaintiff presented for a follow-up with Dr. Bray in November 2011, after calling his office twice to report increased symptoms, including blockage, "[l]ots of pain and gas with eating anything," and weight loss. Tr. 659, 667. By that time, plaintiff was seeking a different gastroenterologist because she felt that Dr. Bray was dismissive of her symptoms. Tr. 120, 383, 659. But she nonetheless kept her appointment with Dr. Bray due to the severity of her symptoms, explaining: "She continues to have terrible trouble with constipation . . . She [takes laxatives to treat this and] goes on a liquid only diet, loses weight, feels weak . . . She states that she [is] feeling so ill she cannot leave home, she cannot work, and she is canceling her planned Hawaii wedding for March 2012." Tr. 383. Dr. Bray continued to suggest pelvic floor dysfunction and also "constipation-predominant IBS," and instructed plaintiff that she needed to engage in diagnostic testing. *Id.*

At a "Psycho diagnostic Evaluation" in January 2012 (i.e., one month after the date last insured), plaintiff reported that her constipation and diarrhea "have significantly worsened over the last 18 months," resulting in "severe GI problems, anal fissures, and weight loss," along with an inability to work due to the need to leave the work environment to use the restroom Tr. 391-93. Plaintiff thereafter continued to seek treatment with Dr. Bray, engage in diagnostic testing (none

of which yielded a definitive diagnosis), and report ongoing debilitating symptoms. *See, e.g.*, Tr. 590-632.

In September 2012, plaintiff had her first appointment with Dr. Kinsman for "reevaluation." Tr. 217. Plaintiff reported "ongoing debilitating difficulties with defecation" and "ongoing severe abdominal pain and bloating whenever she eats." *Id.* She described "an elaborate ritual in order to have a bowel movement which involves excessive straining, positioning herself on all fours to 'change the angle,' and intermittent manual assistance to have a bowel movement [leading to] long periods of time in the restroom." *Id.* Plaintiff stated that "[h]er life is significantly hindered by her inability to leave her place of residence for any significant amount of time or have a meal in public." *Id.* Dr. Kinsman listed her "impressions" as "[s]evere chronic constipation," "[a]bdominal pain and bloating," "some degree of pelvic floor dysfunction," and a possible "rectocele as well as probably a cystocele as well." Tr. 217-18.

Accordingly, Dr. Kinsman referred plaintiff to a cystodefecography, which confirmed the presence "of significant pelvic floor dysfunction resulting in significant alteration in defecation," including "severe posterior compartment prolapse, a large rectocele, and an enterocele." Tr. 213-16. Dr. Kinsman indicated that plaintiff was "currently in the process" of consulting with a colorectal surgeon to determine her options. *Id.*

In December 2012, Dr. Kinsman completed a "Physical Residual Functional Capacity Questionnaire." She listed plaintiff's diagnoses as "severe pelvic floor dysfunction, large rectocele and enterocele [and] large rectocele" that result in "severe disabling defecatory dysfunction and abdominal pain." Tr. 207. As far as limitations, Dr. Kinsman opined, in relevant part, that plaintiff "cannot [be] in a public workplace," even for a low stress job, and would need additional hourly breaks lasting 30 minutes and miss "many" more than four workdays per month due to her

symptoms. Tr. 208-10. Dr. Kinsman did indicate, however, that surgery should restore plaintiff's ability to work. Tr. 210.

In June 2013, Dr. Osmundsen signed a letter prepared by plaintiff's attorney, denoting the need for surgery to correct plaintiff's "vaginal hernia that captures a portion of the rectum and small bowel when bearing down for bowel movement, preventing effective bowel evacuation," and expressing that plaintiff would be unable to work on a sustained basis due to extent of her symptoms. Tr. 692-93.

In July 2013, Dr. Kinsman issued a second opinion, clarifying that her December 2012 report was based on objective measures – i.e., plaintiff's symptom presentation and the cystodefecography. Tr. 695-96. She clarified further that the studies ordered by Dr. Bray would not have revealed the underlying problem. Tr. 207-10, 698. She also indicated that plaintiff had consulted with Dr. Cavanaugh, who stated plaintiff would need to engage in physical therapy before surgery, but Dr. Kinsman did not believe that physical therapy would resolve plaintiff's symptoms or correct the underlying problem.[6] Tr. 697. There is no other evidence in the record that predates the date last insured, nor any additional opinion evidence (except the ME and state agency consulting source Dr. Iyer, who rendered her opinion prior to plaintiff initiating care with Dr. Kinsman). See *F.B. v. Kijakazi*, 2022 WL 4544202, *8 (N.D. Cal. Sept. 28, 2022) ("[w]here medical opinions refer back to the same chronic condition and symptoms discussed in earlier medical records—even those from several years prior—the fact that the most recent opinions were

---

[6] As Judge Aiken observed, plaintiff did eventually engage in physical therapy prior to her first surgical procedure in February 2014. Tr. 908.

Page 10 – OPINION AND ORDER

issued significantly after [the claimant's] DLI does not undercut the weight those opinions are due") (citation and internal quotations omitted).[7]

Third, if the opinions of Drs. Kinsman and Osmundsen were credited as true, the ALJ would be required to make a finding of disability on remand. That is, the VE testified that an individual who required an additional two hours per workday of bathroom breaks would not be competitively employable. Tr. 135.

Finally, the record, as a whole, does not create serious doubt plaintiff is disabled from the alleged onset date through April 30, 2015.[8] Indeed, the Commissioner does not meaningfully address this element, instead reciting boilerplate caselaw. Def.'s Resp. Br. 4-5 (doc. 16). As addressed herein, the record shows that plaintiff experienced painful rectal blockage that required her to spend several hours in the bathroom each day. While plaintiff acknowledges symptom resolution as of July 6, 2017, following a loop colostomy, the record actually reflects that the closed period of disability terminated on an earlier date.

---

[7] The premise underlying the ALJ's decision – i.e., that plaintiff could not have been disabled prior to obtaining objective diagnostic studies approximately one year after the date last insured – overlooks plaintiff's reasons for not seeking or delaying certain modalities of treatment. Namely, the record is replete with evidence that plaintiff was uninsured, had been on the waiting list for years for the Oregon Health Plan, and her charity stipend at the Oregon Clinic and Providence had lapsed. See, e.g., Tr. 336, 385, 387, 391-92, 394, 582, 640; see also Prince v. Astrue, 2012 WL 5388146, *2 (C.D. Cal. Nov. 2, 2012) (recognizing that an inability "to afford more treatment . . . has been found to be a good reason for failure to seek treatment").

[8] Plaintiff submitted additional evidence following the second ALJ decision surrounding her work and medical history. And any remaining ambiguities surrounding plaintiff's functional abilities after her 2014 and 2015 surgical procedures are mitigated by the Court's determination related to the disability onset date. This outcome also avoids "the 'heads we win ; tails, let's play again' scenario that the Ninth Circuit instructs district courts to avoid." Atticus W. v. Kijakazi, 2021 WL 5108743, *6 (D. Or. Nov. 3, 2021) (collecting cases); see also Varela v. Saul, 827 Fed.Appx. 713, 714 (9th Cir. 2020) (reversing district court and instead providing instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled").

In particular, plaintiff underwent a Delorme proctectomy on April 30, 2015. Although plaintiff provided countervailing testimony at the second hearing, the medical record reflects that after this procedure she experienced nearly two years of significant symptom remission. *Compare* Tr. 746-47 (plaintiff's surgeon noting she "underwent a Delorme procedure [which] initially helped her [but] then underwent a cystodefecography about 2 years later after the symptoms resumed"), *with* Tr. 790, 833, 836 (plaintiff reporting only "three months relief" following the Delorme procedure); *see also* Tr. 1196-1212 (plaintiff and her husband commenting in March 2016 that her symptoms were disabling "prior to [her April 2015 corrective] surgery"). Plaintiff reported a recurrence of symptoms in March 2017; however, these symptoms were apparently not as severe since she was able to travel to Spain after that date. Tr. 737, 742, 1292; *see also* 1217-21 (disability report from June 2016 indicating that plaintiff's "health and well being improved drastically after Delorme Surgery" but that her "symptoms are starting to re-occur"). She then underwent the loop colostomy on May 30, 2017, which resolved her impairments. Tr. 725. Because the examining and treating medical opinion evidence was rendered no later than 2013, there is nothing in the record establishing the presence of concrete functional limitations prohibiting competitive employment after April 30, 2015.

In sum, plaintiff applied for benefits 12 years ago, and there are no outstanding issues given the opinions of plaintiff's providers, especially when viewed in conjunction with her post-date last insured treatment records and the VE's testimony. As such, the appropriate remedy is to remand this case for the immediate payment of benefits for a closed period of disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits from October 1, 2010, through April 30, 2015.

IT IS SO ORDERED.

DATED this 30th day of March, 2023.

                                              /s/ Jolie A. Russo
                                              Jolie A. Russo
                                    United States Magistrate Judge